**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **PIERCE PRINCIPLE VENTURES,** : | |
| **INC.,** : | |
| : | Case No.: 1:20-cv-4 |
| Plaintiff. : | |
| : | Judge Richard L. Young |
| v. : | |
| : | Magistrate Judge Mark J. Dinsmore |
| **JH TAX SERVICE AND BOOK-** : | |
| **KEEPING INC., PAMELA** : | JURY TRIAL DEMANDED |
| **REASON, TAMMY TRIMBLE,** : | |
| **CONNIE KINLEY AND** : | |
| **MELISSA ROSEBOROUGH,** : | |
| : | |
| Defendants. : | |

---

**PLAINTIFF PIERCE PRINCIPLE VENTURES, INC.'S AMENDED VERIFIED**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiff Pierce Principle Ventures, Inc. ("Plaintiff") files this complaint and demand for jury trial against Defendants JH Tax Service and Bookkeeping Inc., Pamela Reason, Tammy Trimble, Connie Kinley and Melissa Roseborough (collectively, "Defendants") and alleges the following:

### INTRODUCTION

1.      Plaintiff Pierce Principle Ventures, Inc. ("Plaintiff") requires this Court's immediate action in order to be protected from further material and irreparable harm from its former employees, Defendants Pamela Reason, Tammy Trimble, Connie Kinley and Melissa Roseborough, and the tax preparation and bookkeeping business they have opened, using Plaintiff's furniture and signage, in the office where Plaintiff had operated a tax business since 2007, until Defendants persuaded the landlord to evict Plaintiff on October 31, 2019.

1

2.      Defendants' scheme is aimed at acquiring, for nothing, the entire customer base of a Jackson Hewitt franchise that has been in operation, profitably, since 1998, a franchise that Plaintiff purchased from the prior franchisee.

3.      The individual Defendants own and/or work for Defendant JH Tax Service and Bookkeeping Inc., in direct violation of the confidentiality, non-competition and non-solicitation provisions contained in Defendant Reason's employment agreement with Plaintiff and in tortious interference with Plaintiff's business relationships with its tax preparation clients.

4.      Defendant Reason's employment agreement, among other things, restricts her from (1) using, copying or otherwise disclosing Plaintiff's confidential information, including private customer information, customer lists, and business methods; (2) soliciting, or attempting to solicit, any person for whom Plaintiff prepared or electronically filed a federal tax return within a 25-mile radius of any of Plaintiff's tax preparation businesses where she was employed for  a 24 month period following her employment with Plaintiff; and (3) soliciting, recruiting or hiring any of Plaintiff's tax preparers, processors, supervisory or management employees for 24 months following her employment with Plaintiff and within the same 25-mile radius.

5.      Because of the actual threat of irreparable harm that Defendants' operation of a tax preparation business in Plaintiff's former location presents, Plaintiff seeks to temporarily, preliminarily and permanently enjoin Defendant Reason from violating the terms of her employment agreement.

6.      Plaintiff further seeks to temporarily, preliminarily and permanently enjoin Defendant JH Tax Service, or any other entity, and Defendant Trimble, Kinley and Roseborough from conspiring with Defendant Reason to violate the terms of Defendant Reason's employment agreement.

7.      This Court's immediate action is required to prevent Defendants from exploiting its knowledge of Plaintiff's tax preparation methods, customer information, marketing methods and strategies and its occupancy of Plaintiff's former location to irreparably divert Plaintiff's customer base and business revenue to Defendants.

8.      Plaintiff seeks only injunctive relief, attorney fees, and costs against Defendant Reason through this action, since claims for damages are subject to the arbitration clause contained in Defendant Reason's employment agreement.

9.      As for Defendant Kinley, Plaintiff is informed and believes and thereupon alleges upon information and belief, that Defendant Kinley signed an employment agreement containing identical confidentiality, non-competition and non-solicitation clauses as Defendant Reason.

10.      Plaintiff reserves the right to amend this Complaint if an employment agreement between Plaintiff and Defendant Kinley is located or otherwise proven to exist.

11.      In the alternative, Plaintiff alleges that Defendant Kinley did not sign an employment agreement with Plaintiff and therefore seeks damages against Defendant Kinley in this action along with injunctive relief.

12.      As for Defendants JH Tax Service, Trimble, and Roseborough, in addition to injunctive relief, attorney fees, and costs, Plaintiff seeks damages against JH Tax Service and Defendants Trimble and Roseborough individually, since there is no arbitration provision between Plaintiff and JH Tax Service and because Plaintiff is informed and believes and thereupon alleges upon information and belief that neither Defendant Trimble nor Defendant Roseborough entered into an employment agreement or arbitration agreement with Plaintiff.

## JURISDICTION AND VENUE

13.      The jurisdiction of this court over this controversy is invoked pursuant to 28 U.S.C.

3

§ 1332, as there is diversity of citizenship between the parties and Defendants' unlawful conduct caused Plaintiff to suffer loss revenue, lost goodwill and other damages in excess of $75,000.00.

14.     Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b)-(c) because Delaware County, Indiana, is where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

## PARTIES

15.     Plaintiff Pierce Principle Ventures, Inc. is a Texas corporation.

16.     Defendant JH Tax Service and Bookkeeping Inc. ("JH Tax Service") is a Delaware corporation, formed on July 11, 2019.

17.     Defendants Pamela Reason ("Defendant Reason"), Tammy Trimble ("Defendant Trimble"), Connie Kinley ("Defendant Kinley") and Melissa Roseborough ("Defendant Roseborough") are residents and citizens of the state of Indiana.

## FACTS

18.     Immediately prior to opening JH Tax Service in direct competition against Plaintiff, Defendant Reason was employed by Plaintiff as its General Manager for its 12 Jackson Hewitt franchise stores in Anderson, Muncie, Indianapolis, Noblesville, Fishers, Lawrence, and Greenville, Indiana.

19.     Defendant Reason was Plaintiff's employee when she incorporated Defendant JH Tax Service.

20.     Last tax season, Defendant Reason prepared approximately 100 tax returns for Plaintiff.

21.     Defendant Trimble had been employed by Plaintiff as a managerial employee and tax preparer since 2008.

22.     Last tax season, Defendant Trimble prepared approximately 160 tax returns for Plaintiff.

23.     Defendant Kinley had been employed by Plaintiff as a managerial employee and tax preparer since 2004.

24.     Last tax season, Defendant Kinley prepared approximately 420 tax returns for Plaintiff.

25.     Defendant Roseborough had been employed by Plaintiff as a tax preparer since 2018.

26.     Last tax season, Defendant Roseborough prepared approximately 100 tax returns for Plaintiff.

27.     At all times relevant to this complaint, Defendants acted or failed to act by and through their duly authorized agents, servants, and employees who conducted themselves within the scope and course of their employment.

28.     During the past several months, the individual Defendants conspired to have Plaintiff's landlord terminate its lease, misled Plaintiff into leaving its furniture and exterior sign at that site for Defendants' new business to use, marketed their services to Plaintiff's tax preparation clientele in the manner that Plaintiff had taught to them, and deceived the public about the relationship of their new business to Plaintiff, all with the express purpose of diverting Plaintiff's entire tax preparation customer base to Defendants.

29.     Since October 1, 2007, Plaintiff has operated a tax preparation business at 2815 North Wheeling Avenue, Muncie, Indiana.

30.     Plaintiff's 2815 North Wheeling Avenue tax preparation business operated as a Jackson Hewitt franchise.

31.     Plaintiff leased the space at 2815 North Wheeling Avenue in Muncie beginning on October 1, 2007, for a 31 month term, after which the lease continued on a month to month basis. A true and correct copy of Plaintiff's lease at 2815 North Wheeling Avenue, Muncie, Indiana, is attached hereto as *Exhibit A*.

32.     Defendant Reason began employment with Plaintiff in 2006.

33.     Since 2007, Plaintiff has owned 12 Jackson Hewitt franchise stores, in Anderson, Muncie, Indianapolis, Noblesville, Fishers, Lawrence, and Greenville, Indiana.

34.     Plaintiff assigned Defendant Reason to the position of General Manager of its 12 Jackson Hewitt stores in 2007.

35.     Defendants Trimble and Kinley were both tax preparers and managerial employees of Plaintiff.

36.     Defendant Trimble had been employed with Plaintiff since 2008.

37.     Defendant Kinley had been employed with Plaintiff since 2004.

38.     Defendant Roseborough had been employed as a tax preparer for Plaintiff since 2018.

39.     As Plaintiff's General Manager, managerial  employees and tax preparers, the individual Defendants were privy to confidential and proprietary information related to Plaintiff's customers, processes, pricing structures, marketing strategies, and business and technical strategies.

40.     As General Manager, Defendant Reason had computer access to Plaintiff's confidential information including client lists, product information, pricing, and business plans through November 10, 2019.

41.     As a managerial employee, Defendant Trimble had access to Plaintiff's confidential

information including client lists, product information, pricing, and business plans until she resigned her employment with Plaintiff on November 20, 2019.

42.    As a managerial employee, Defendant Kinley had access to Plaintiff's confidential information including client lists, product information, pricing, and business plans until she resigned her employment with Plaintiff on December 18, 2019.

43.    Upon information and belief, Plaintiff further alleges that Defendants are in possession of Plaintiff's computers and files with client information including addresses, phone numbers, and copies of other information.

44.    At the time of her hiring, Defendant Reason signed an employment agreement with Plaintiff.  (A true and correct copy of Defendant Reason's employment agreement with Plaintiff is attached hereto as  *Exhibit B*).

45.    Defendant Reason's employment agreement provides as follows:

> 8.    **CONFIDENTIAL INFORMATION.**  You acknowledge that your employment will require you to see confidential information, including, but not limited to, private information about our customers, our customer lists and our business methods or software.  You may never make copies of our tax preparation, processing electronic filing or payroll software or use it for any purpose other tha[n] managing the tax office or preparing tax returns for us during your employment with us.  You may not make a list of customers.
>
> You agree that you will never, at any time: a) directly or indirectly, copy or disclose to any person or firm, any of our customer lists or other confidential information; or b) divulge or use the names of our customers or the information contained in our customers' tax returns for any purpose other than managing the tax office or preparing tax returns in the course of your employment with us.
>
> 9.    **COMPETING WORK DURING EMPLOYMENT.**  You agree that during your employment with us, you will not, for yourself or for any other person or entity, directly or indirectly, at any location, in any capacity, manage any tax office, prepare tax returns or file tax returns for yourself or any other person or business other than ours.  You further agree and accept as a condition of your

employment, that all tax returns you prepare, except your own, must be processed through our tax preparation and processing system, in accordance with all our policies and procedures.

10. **COMPETING AFTER YOUR EMPLOYMENT IS ENDED.** You agree that during the 24 month period after the date that you are no longer our employee, you will not, directly or indirectly, for yourself or for any other person or entity, within a twenty-five (25) mile radius of the office(s) where you were employed, solicit, or attempt to solicit any person for whom we prepared or electronically filed a federal tax return during the Tax Season or solicit, take the solicitation of, recruit or hire, any of our tax preparers, processors, supervisory or management employees

11. **SOLICITING.** You agree that during the 24 month period after the date that you are no longer our employee, you will not directly or indirectly, for yourself or for any other person or entity, within a twenty-five (25) mile radius of the office(s) you managed and the office(s) where you filed a federal tax return during the Tax Season or solicit, take the solicitation of, recruit or hire, any of our tax preparers, processors, supervisory or management employees.

46.    After a dozen years as a tenant at 2815 North Wheeling Avenue in Muncie, and without defaulting on its lease, on October 1, 2019, Plaintiff suddenly received a notice that the landlord was terminating the lease effective October 31, 2019, to rent to a new tenant.

47.    Plaintiff's President and shareholder, Les Pierce, immediately inquired with Plaintiff's General Manager, Defendant Reason, about why the landlord had terminated the lease.

48.    Defendant Reason responded that the landlord had "found a new tenant."

49.    When Mr. Pierce asked if Defendant Reason knew who the new tenant was, Defendant Reason deceitfully stated, "No, he didn't say, and he doesn't have to tell us what's going on. I think he wants to sell the building. There is someone interested in buying it."

50.    Mr. Pierce responded that this seemed odd, that the landlord had not asked Plaintiff whether Plaintiff wanted to buy the building, because Plaintiff had a right of first refusal if the landlord ever received an offer to buy the building (*Exhibit A*, p. 5), and because the landlord's eviction notice had said that the space was being rented to a new tenant.

51.     What Defendant Reason did not tell Mr. Pierce was that the "new tenant" was a company that Defendant Reason and Defendant Trimble had formed in July, 2019: JH Tax Service.

52.     Upon information and belief, Defendants Reason and Trimble made false and misleading statements to the landlord to induce the landlord to terminate Plaintiff's lease at 2815 North Wheeling Avenue in Muncie.

53.     Thereafter, Mr. Pierce asked Defendant Reason what Plaintiff should do with the office furniture at its North Wheeling Avenue location.

54.     Defendant Reason deceitfully responded that the furniture was not in very good shape, and recommended that Plaintiff abandoned it on site and the landlord would discard it.

55.     What Defendant Reason did not tell Mr. Pierce was that Defendants were planning to use Plaintiff's furniture for the new business they were going to open in that very same location.

56.     Mr. Pierce also asked Defendant Reason whether Plaintiff should arrange to have its sign removed from the roof above the door of the location.

57.     Defendant Reason misleadingly responded that Plaintiff could leave its Jackson Hewitt sign; the landlord would simply turn it around so that it did not face the public.

58.     What Defendant Reason did not tell Mr. Pierce was that Defendants were planning to continue to use the sign, which reads "TAX SERVICE" in large, red, capital letters in the center, along with "Tax Preparation," "Electronic Filing" and "Business and Individual" to both sides.  (A true and correct photograph of the sign on the roof at 2815 North Wheeling Avenue, Muncie, after JH Tax Service opened for business at that location that accurately depicts the sign at the time the photograph was taken is attached as *Exhibit C*).

59.     Part of Defendant Reason's annual responsibilities as Plaintiff's General Manager was to recruit seasonal tax preparer employees for Plaintiff for each upcoming tax season.

60.     In late summer and early fall 2019, Defendant Reason repeatedly reassured Mr. Pierce, that she had recruited sufficient employees for Plaintiff's 12 stores, including Defendant Trimble.

61.     In fact, however, Defendant Reason was only recruiting for Defendant JH Tax Service, including Defendants Trimble, Kinley and Roseborough.

62.     On October 30, 2019, Defendant Reason falsely informed Mr. Pierce that an opportunity had "come up" and she was going to accept.

63.     In fact, however, no offer had simply "come up."  Rather, she had created the "opportunity" over the preceding months by forming Defendant JH Tax Service in July of 2019 with Defendant Trimble (they are the corporation's President and Secretary) and recruiting Defendants Kinley and Roseborough to compete directly against Plaintiff with them.  (A true and correct copy of the incorporation details for JH Tax Service from the State of Indiana Secretary of State's web site, listing JH Tax Service as a foreign corporation formed in the State of Delaware by Defendants Reason and Trimble in July 2019 is attached hereto as *Exhibit D*).

64.     Plaintiff is informed and believed and thereon alleges upon information and belief, that prior to opening JH Tax Service, and while still employed by Plaintiff, Defendants used customer names and contact information for Plaintiff's tax preparation customers to market tax preparation services in direct competition against Plaintiff's Jackson Hewitt franchises.

65.     Further, Plaintiff is informed and believed and thereon alleges that, prior to opening JH Tax Service, and while still employed by Plaintiff, Defendants retained confidential and proprietary information about Plaintiff's marketing techniques and business methods and strategies.

66.     Defendants held a "Customer Appreciation and Grand Opening" event for JH Tax

Service on December 17, 2019. Defendants promoted this event on Facebook as an occasion when they "greeting many clients, old and new, with open arms."  (A true and correct copy of Defendant's December 18, 2019, Facebook posting (downloaded December 23, 2019) is attached hereto as *Exhibit E*).

67.     The individual Defendants all participated in the opening of and currently work for Defendant JH Tax Service.

68.     Defendants' timing is no accident: tax services make most of their income in January and early February, during the busy season called "Tax Season" in their employment agreements.

69.     Defendants marketing materials reference a "customer appreciation" event; they had no prior customers to appreciate other than the customers whom they had served while employed by Plaintiff.

70.     Defendants' marketing materials emphasize that Defendant JH Tax Service has the same staff that would have served customers there on behalf of Plaintiff previously: "New company name: Same friendly tax preparers."

71.     Defendant's "new" name, JH Tax Service, is misleading in that it suggests a connection to Plaintiff's former Jackson Hewitt ("JH") store.  None of the defendants have names with the initials "J" or "H," whereas Jackson Hewitt commonly uses the initials "JH" to refer to its office nationwide and as its logo in office windows.

72.     The location that Defendants targeted and took over is also no accident.  Last tax season, Plaintiff's Jackson Hewitt franchise at 2815 Wheeling Avenue in Muncie was its busiest store in Muncie, doing the amount of business of Plaintiff's other three Muncie-area stores combined.  It was also the second-busiest of the 12 Jackson Hewitt franchises that Plaintiff owns.

73.     Since the "grand opening" of JH Tax Service, Defendants have been compounding Plaintiff's losses by referring customers to Plaintiff for the Early Refund Advance Loan that Plaintiff's Jackson Hewitt stores offer, but Defendants do not.

74.     The Jackson Hewitt Early Refund Advance Loans are offered in amounts between $200-$500 at no cost to the customer, and with no obligation that the customer return to Jackson Hewitt to have their tax return prepared.

75.     The Early Refund Advance Loan is offered prior to the customer filing his or her tax return, based on the customer's most recent pay stub or equivalent form of evidence of income.

76.     The Early Refund Advance Loan program does not, however, obligate the customer to file their tax return with Jackson Hewitt, as Defendants are well aware.

77.     Accordingly, Defendants have been directing customers seeking the Early Refund Advance Loan to Plaintiff's relocated Jackson Hewitt store a few yards away, and at the same time encouraging them to come back to JH Tax Service rather than Plaintiff's Jackson Hewitt store when they return to file their tax return.

78.     As a Jackson Hewitt franchisee participating in the Early Refund Advance Loan program, each such loan issued costs Plaintiff $45, without any guarantee that the customer will return to one of Plaintiff's Jackson Hewitt stores to file his or her tax return.

79.     Since Defendants do not offer such a program, they are referring such customers to Plaintiff, at a cost of $45 each to Plaintiff, while explicitly encouraging those customers to return to Defendant JH Tax Service to prepare the individual's tax return.

80.     In this manner, Defendants are imposing costs on Plaintiff for customers from whom only Defendants will earn tax preparation income.

81.     JH Tax Service is a direct competitor to Plaintiff in the federal income tax return

preparation business.

82.    It generally takes years to build up customer trust to the point that a customer will return, year after year, to a tax preparer.

83.    Goodwill and personal contacts with Plaintiff's tax preparers are what has kept Plaintiff's customers coming back, year after year, for tax preparation services.

84.    Most of Plaintiff's Muncie, Indiana, tax preparation customers come from within a radius of approximately 25 miles.  Some come from further away.

85.    After being evicted, and with no knowledge that Defendants were setting up a competing tax preparation business in its former office space, Plaintiff rented space and re-opened its Jackson Hewitt franchise a few yards away, at 2801 Wheeling Avenue in Muncie, where it stands ready to serve its current and future clients.

86.    Plaintiff sent Defendants a letter demanding that they immediately cease all competitive activity against Plaintiff on December 18, 2019.

87.    Five days later, on December 23, 2019, Jackson Hewitt Inc. ("JHI"), the franchisor of Plaintiff's tax preparation stores, sent Defendant Reason a letter that she "immediately cease and desist from infringing JHI's federally registered trademarks, in violation of federal trademark law, and from misappropriating JHI's trade secret secrets, in violation of federal and state law governing trade secrets."  (A true and correct copy of the JHI cease and desist letter is attached hereto as *Exhibit F*).

88.    JHI raised the specific concern that Defendants were operating JH Tax Service "at the very same location that had previously been an authorized Jackson Hewitt franchised tax preparation business for more than 20 years," which "is likely to confuse customers…." (*Exhibit F,* p. 2).

13

89.    Especially concerning to Plaintiff and JHI is that, during the time of Defendant Reason's employment, she was granted access to confidential trade secrets such as "the identities of customers served by the Franchised Business (including their names, addresses, phone numbers, social security numbers and financial and tax information), tax return copies …, customer lists, mailing labels, W-2s, 1099s, 8453s, work in progress, … [and] other documents related to services performed on behalf of customers…."  (*Exhibit F,* p. 3).

90.    Their concern, as JHI explained, is that "[t]hese trade secrets derive independent economic value from not being generally known to or not being reasonably ascertainable by proper means to the public and JHI's competitors…."  (*Exhibit F,* p. 3).

91.    Despite Plaintiff's and JHI's letters demanding that Defendants cease their unlawful operation of a tax preparation service, Defendants have continued to operate JH Tax Service and engage in competitive activity against Plaintiff as of the time of this filing.

92.    For example, as recently as January 3, 2020, Defendant Trimble falsely informed one of Plaintiff's current customers, Sarah Carnes, that Defendant Trimble was still affiliated with Jackson Hewitt.

93.    On that date, Defendant Trimble had seen Ms. Carnes outside Plaintiff's new location, which is across a parking lot from its former location now occupied by Defendant JH Tax Service.  (*Exhibit G,* Declaration of Mistina Fox, ¶¶ 1-3). Defendant Trimble then waived Ms. Carnes over to meet her, and they had a conversation in which Ms. Carnes indicated that she had asked one of Plaintiff's employees whether Ms. Trimble was still with Jackson Hewitt and had been told that Ms. Trimble was no longer with Jackson Hewitt.  Defendant Trimble then stated to the customer, Ms. Carnes, that this was incorrect, that she was still with Jackson Hewitt.  Defendant Trimble then asked Ms. Carnes whether she had signed anything yet regarding her tax return,

14

because if not Defendant Trimble could complete the return at Defendant Trimble's office. (*Exhibit G,* Declaration of Mistina Fox, ¶¶ 3-5; *Exhibit H,* Declaration of Marion Crusott, ¶¶ 1-4).

94.     Ms. Carnes then re-entered Plaintiff's store, upset that Plaintiff's employee, Marion Crusott, had told her that Ms. Trimble was no longer with Jackson Hewitt.  Another one of Plaintiff's employees, tax preparer Mistina Fox, responded that Mr. Crusott had been truthful, that Ms. Trimble is no longer with Jackson Hewitt, and that Defendant Trimble had given Ms. Carnes false information about Ms. Trimble still being affiliated with Jackson Hewitt.  (*Exhibit G,* Declaration of Mistina Fox, ¶¶ 6-7).

95.     In 2019, PPV completed 68% of all of the 2018 tax returns that it completed for its customers between January 1 and February 28, 2019.

96.     At its Wheeling Avenue store in Muncie, Indiana, PPV's busiest period was between January 15 and February 15, 2019.  During the second half of January, 2019, PPV completed 138 tax returns at its Wheeling Avenue store.  During the first half of February, 2019, PPV completed 99 tax returns at its Wheeling Avenue store.  These 237 tax returns represent approximately 60% of PPV's business at that store for the entire year of 2019.  The second half of January alone accounted for 35% of PPV's business at that store for the entire year in 2019.

## Count 1 – Injunctive Relief Based On Breach of Contract
## Against Defendant Reason Only

97.     Plaintiff hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

98.     At the time of her hiring, on or about May 8, 2006, Defendant Reason entered into an employment agreement with Plaintiff.  (*Exhibit B*).

99.     Defendant Reason's employment agreement contained the following confidentiality, non-solicitation and non-competition provisions:

15

8.    **CONFIDENTIAL INFORMATION.**  You acknowledge that your employment will require you to see confidential information, including, but not limited to, private information about our customers, our customer lists and our business methods or software.  You may never make copies of our tax preparation, processing electronic filing or payroll software or use it for any purpose other tha[n] managing the tax office or preparing tax returns for us during your employment with us.  You may not make a list of customers.

You agree that you will never, at any time: a) directly or indirectly, copy or disclose to any person or firm, any of our customer lists or other confidential information; or b) divulge or use the names of our customers or the information contained in our customers' tax returns for any purpose other than managing the tax office or preparing tax returns in the course of your employment with us.

9.    **COMPETING WORK DURING EMPLOYMENT.** You agree that during your employment with us, you will not, for yourself or for any other person or entity, directly or indirectly, at any location, in any capacity, manage any tax office, prepare tax returns or file tax returns for yourself or any other person or business other than ours.  You further agree and accept as a condition of your employment, that all tax returns you prepare, except your own, must be processed through our tax preparation and processing system, in accordance with all our policies and procedures.

10.    **COMPETING AFTER YOUR EMPLOYMENT IS ENDED.**  You agree that during the 24 month period after the date that you are no longer our employee, you will not, directly or indirectly, for yourself or for any other person or entity, within a twenty-five (25) mile radius of the office(s) where you were employed, solicit, or attempt to solicit any person for whom we prepared or electronically filed a federal tax return during the Tax Season or solicit, take the solicitation of, recruit or hire, any of our tax preparers, processors, supervisory or management employees

11.    **SOLICITING.**  You agree that during the 24 month period after the date that you are no longer our employee, you will not directly or indirectly, for yourself or for any other person or entity, within a twenty-five (25) mile radius of the office(s) you managed and the office(s) where you filed a federal tax return during the Tax Season or solicit, take the solicitation of, recruit or hire, any of our tax preparers, processors, supervisory or management employees.

100.    Defendant Reason's employment with Plaintiff is a valid enforceable contract

supported by consideration in the form of continued employment with Plaintiff and compensation for that employment.

101.    As alleged more fully above, Defendant Reason breached her employment agreement with Plaintiff by retaining and using Plaintiff's confidential and proprietary information including customer names and contact information, processes, pricing structures, marketing techniques and strategies, and business and technical methods and strategies in direct competition with Plaintiff, both during and after her employment with Plaintiff.

102.    Defendant Reason breached her employment agreement by soliciting Defendants Trimble, Kinley and Roseborough to leave their employment with Plaintiff to work for Plaintiff's direct competitor, JH Tax Service.

103.    Defendant Reason's breach of her employment agreement has proximately caused Plaintiff to suffer loss revenue, lost goodwill and other damages in excess of $75,000.00.

WHEREFORE, with regard to Count 1, Plaintiff demands:

(a)    a temporary restraining order and a preliminary and permanent injunction enjoining Defendant Reason from:

(1) operating a tax preparation and bookkeeping business in Plaintiff's former site at 2815 North Wheeling Avenue, Muncie, Indiana or anywhere within a 25-mile radius of any of Plaintiff's tax preparation businesses where any of Defendants' worked for Plaintiff;

(2) using or disclosing, directly or indirectly, on behalf of themselves or any other person, firm, corporation, association or other entity, any of Plaintiff's proprietary business information, including Plaintiff's customer contact information business processes, pricing structures, marketing strategies, and

related information to which the individual Defendants had access through their employment by Plaintiff; and

(3) soliciting, recruiting or hiring any of Plaintiff's tax preparers, processors, supervisory or management employees; and

(b)    such other and further relief as this Court finds just and equitable.

### Count 2 – Tortious Interference with Business Relations
### Against All Defendants

104.    Plaintiff hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

105.    Plaintiff has valid business relationships with the customers of its 12 Jackson-Hewitt franchises.

106.    Defendants, as Plaintiff's former employees, are aware of Plaintiff's business relationships with the customers of its 12 Jackson Hewitt franchises.

107.    As more fully alleged above, Defendants have intentionally interfered with Plaintiff's business relationships with its customers by deceiving Plaintiff about the termination of its lease; deceitfully keeping Plaintiff's sign and furniture; and emphasizing in their marketing materials that Defendant JH Tax Service has the same staff that would have served customers there previously: "New company name: Same friendly tax preparers."

108.    There is no justification for Defendants' deceitful and intentional interference with Plaintiff's business relationships.

109.    Defendants' interference consists of independent illegal actions including, but not limited to, breach of non-competition and non-solicitation covenants, retention and misuse of confidential information, conspiracy and breach of fiduciary duty, as alleged herein.

110.    Defendants' intentional interference with Plaintiff's business relationships has

proximately caused Plaintiff to suffer loss revenue, lost goodwill and other damages in excess of $75,000.00.

WHEREFORE, with regard to Count 2, Plaintiff demands:

(a)    a temporary restraining order and a preliminary and permanent injunction enjoining Defendants from:

(1) operating a tax preparation and bookkeeping business in Plaintiff's former site at 2815 North Wheeling Avenue, Muncie, Indiana or anywhere within a 25-mile radius of any of Plaintiff's tax preparation businesses where any of Defendants' worked for Plaintiff;

(2) using or disclosing, directly or indirectly, on behalf of themselves or any other person, firm, corporation, association or other entity, any of Plaintiff's proprietary business information, including Plaintiff's customer contact information business processes, pricing structures, marketing strategies, and related information to which the individual Defendants had access through their employment by Plaintiff; and

(3) soliciting, recruiting or hiring any of Plaintiff's tax preparers, processors, supervisory or management employees;

(b)    For actual, special, and compensatory damages in an amount to be determined at trial but in no event less than $75,000.00;

(c)    For actual, special, and compensatory damages in an amount to be determined at trial but in no event less than $75,000.00;

(d)    For punitive damages in an amount sufficient to deter Defendants from conducting similar future conduct but in no event less than $100,000;

(e)    Judgment for attorneys' fees, pursuant any applicable statute;

(f)    Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

(g)    Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

(c)    Such other and further relief as this Court finds just and equitable.

**Count 3 – Breach of Fiduciary Duty
Against All Individual Defendants**

111.    Plaintiff hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

112.    Upon information and belief, Plaintiff thereupon alleges that the individual Defendants Reason, Trimble, Kinley and Roseborough, while they were employed by Plaintiff, used Plaintiff's confidential and proprietary information including customer names and contact information, processes, pricing structures, marketing techniques and strategies, and business and technical methods and strategies in direct competition with Plaintiff.

113.    By engaging in said conduct while they were employed by Plaintiff, these individual Defendants breached their fiduciary duty to Plaintiff as their employer.

114.    Defendants' breach of fiduciary has proximately caused Plaintiff to suffer loss revenue, lost goodwill, lost compensation paid to Defendants and other damages in excess of $75,000.00.

WHEREFORE, with regard to Count 3, Plaintiff demands:

(a)    a temporary restraining order and a preliminary and permanent injunction enjoining Defendants from:

(1) operating a tax preparation and bookkeeping business in Plaintiff's former site at 2815 North Wheeling Avenue, Muncie, Indiana or anywhere within a 25-mile radius of any of Plaintiff's tax preparation businesses where any of Defendants' worked for Plaintiff;

(2) using or disclosing, directly or indirectly, on behalf of themselves or any other person, firm, corporation, association or other entity, any of Plaintiff's proprietary business information, including Plaintiff's customer contact information business processes, pricing structures, marketing strategies, and related information to which the individual Defendants had access through their employment by Plaintiff; and

(3) soliciting, recruiting or hiring any of Plaintiff's tax preparers, processors, supervisory or management employees; For actual, special, and compensatory damages, including John Doe's medical fees and legal fees, in an amount to be determined at trial but in no event less than $75,000.00;

(b) For actual, special, and compensatory damages including disgorgement of all compensation paid to Defendants while they were breaching their fiduciary duties in an amount to be determined at trial but in no event less than $75,000.00;

(c) For punitive damages in an amount sufficient to deter Defendants from conducting similar future conduct but in no event less than $100,000;

(d) Judgment for attorneys' fees, pursuant any applicable statute;

(e) Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

(f)     Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

(g)     Such other and further relief as this Court finds just and equitable.

### Count 4 – Civil Conspiracy
### Against All Individual Defendants

115.    Plaintiff hereby incorporates by reference the aforementioned allegations contained in this complaint as though fully set forth herein.

116.    Defendants engaged in concerted action to open a tax preparation service in direct competition against Plaintiff by unlawful means.

117.    The unlawful means by which Defendants engaged in concerted action in direct competition against Plaintiff include breach of contract, tortious interference with business relationships, and breach of fiduciary duty.

118.    Defendants' conspiracy has proximately caused Plaintiff to suffer loss revenue, lost goodwill, lost compensation paid to Defendants and other damages in excess of $75,000.00.

WHEREFORE, with regard to Count 4, Plaintiff demands:

(a)     a temporary restraining order and a preliminary and permanent injunction enjoining Defendants from:

(1) operating a tax preparation and bookkeeping business in Plaintiff's former site at 2815 North Wheeling Avenue, Muncie, Indiana or anywhere within a 25-mile radius of any of Plaintiff's tax preparation businesses where any of Defendants' worked for Plaintiff;

(2) using or disclosing, directly or indirectly, on behalf of themselves or any other person, firm, corporation, association or other entity, any of Plaintiff's proprietary business information, including Plaintiff's customer contact

information business processes, pricing structures, marketing strategies, and related information to which the individual Defendants had access through their employment by Plaintiff; and

(3) soliciting, recruiting or hiring any of Plaintiff's tax preparers, processors, supervisory or management employees; For actual, special, and compensatory damages, including John Doe's medical fees and legal fees, in an amount to be determined at trial but in no event less than $75,000.00;

(b)    For actual, special, and compensatory damages including disgorgement of all compensation paid to Defendants while they were breaching their fiduciary duties in an amount to be determined at trial but in no event less than $75,000.00;

(c)    For punitive damages in an amount sufficient to deter Defendants from conducting similar future conduct but in no event less than $100,000;

(d)    Judgment for attorneys' fees, pursuant any applicable statute;

(e)    Judgment for all other reasonable and customary costs and expenses that were incurred in pursuit of this action;

(f)    Pre-judgment interest and post judgment interest as may be permitted by law and statute; and/or

(g)    Such other and further relief as this Court finds just and equitable.

Respectfully submitted,
/s/ Eric J. Rosenberg
Eric J. Rosenberg (0069958)
Rosenberg & Ball Co. LPA
395 North Pearl Street
Granville, Ohio 43023
740.644.1027 phone
866.498.0811 fax
erosenberg@rosenbergball.com

erosenberg@rosenbergball.com

STATE OF OHIO                :
                            : SS,
COUNTY OF FRANKLIN          :

I, Leslie Pierce, after being first duly sworn, deposes and states that: (a) I am the Owner of Pierce Principle Ventures, Inc., (b) I have read the forgoing Verified Complaint; (c) this verification is based upon my own knowledge, information and belief, and (d) I believe the allegations in the forgoing Verified Complaint to be true, to the best of my knowledge, information, and belief.

_____
Leslie W. Pierce

This verification has been sworn to before me and subscribed in my presence this ~~26th~~ 6th day of ~~December, 2019~~ January 2020.

_____
Notary Public

24

<u>Jury Demand</u>:

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

/s/ Eric J. Rosenberg
Eric J. Rosenberg (0069958)
